**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
EARNEST WILSON,                               )
                                              )
                    Plaintiff,                )
                                              )
        v.                                    )        Civil Action No. 13-0428 (RWR)
                                              )
UNITED STATES OF AMERICA, *et al.*,           )
                                              )
                    Defendants.               )
_____ )


**MEMORANDUM OPINION**


Plaintiff Earnest Wilson filed this action challenging the government's response to his request involving a firearms trace report that played a role in his conviction for possessing a firearm which had been shipped in interstate commerce.  The government filed a Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment.  For the reasons discussed below, the motion will be granted.

## I.  BACKGROUND

On February 17, 2000, in Chicago, Illinois, plaintiff was arrested "and charged with a violation of Illinois criminal law . . . , Felony Possession/Use Weapon/Firearm – in case number 00CR0657001."  Compl. at 4 (page numbers designated by plaintiff).  The Chicago Police Department submitted "a formal request to the [Bureau of Alcohol, Tobacco and Firearms'] National Tracing Center on February 29, 2000, for a 'trace to purchaser' [report] on the firearm

bearing serial number 309-49395 which was the subject of the arrest and charges." *Id.*; *see id.*, Ex. 1 (Firearms Trace Summary, Trace Number: T2000041859) at 1 (identifying Ruger pistol, Model P89, bearing serial number 309-49395). According to the Firearms Trace Summary, the pistol was manufactured by Sturm, Ruger & Co., Inc. in Southport, Connecticut; was shipped on August 23, 1994 to Point Sporting Goods Co., Inc. in Stevens Point, Wisconsin; was shipped on August 30, 1994 to Gat Guns, Inc. in Dundee, Illinois; and was sold on January 23, 1995 to an individual in Schaumburg, Illinois. *See id.*, Ex. 1 at 2.

"Special Agent Michael G. Casey [of the Bureau of Alcohol, Tobacco, Firearms and Explosives] made an interstate nexus determination in reference to two (2) firearms," one of which was the Ruger. *Id.*, Ex. 3 (Report of Investigation dated September 19, 2001). The determination is reflected in a Report of Investigation:

> SYNOPSIS:
>
> On September 19, 2001, Special Agent (SA) Michael G. Casey made an interstate nexus determination in reference to two (2) firearms, which was requested by SA Jeffrey Sisto.
>
> NARRATIVE:
>
> 1. SA Casey obtained the descriptions of the following firearms:
>
> One Cobray S.W.D., Inc., model M-11, 9mm semi-automatic pistol, serial number obliterated
>
> One Sturm Ruger, model P89, 9mm semi-automatic pistol, serial number 309-49395
>
> 2. SA Casey determined that the above listed firearms were manufactured outside the State of Illinois, and therefore have *moved in or affected interstate commerce in at least one point in time*. The above listed manufacturers have never maintained a manufacturing plant in the State of Illinois.

*Id.*, Ex. 3 (emphasis added).

According to a criminal complaint filed on October 9, 2001, in the United States District Court for the Northern District of Illinois, Eastern Division, plaintiff was charged with a violation of 18 U.S.C. § 922(g)(1).[1]  *Id.*, Ex. 2 (Criminal Complaint, *United States v. Wilson*, No. 01CR847 (N.D. Ill. Oct. 9, 2001)) at 1.  Supporting the complaint was the affidavit of Jeffrey Sisto, a Special Agent of the United States Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms ("ATF").  *Id.*, Ex. 2 (Criminal Complaint and Affidavit of Jeffrey Sisto ("Sisto Aff.")).  In relevant part, the affiant stated:

> 8.     On February 17, 2000, Chicago Police Officers . . . stopped a black 1999 four-door Lincoln Navigator for various traffic violations [in] Chicago, Illinois.  After the vehicle stop, it was determined that [plaintiff] was the driver.  [Plaintiff] refused to answer questions or give Chicago Police officers his driver's license.  After the arrival of another Chicago Police patrol unit, [plaintiff] rolled his window down approximately one-inch and produced a driver's license.  Due to [plaintiff's] suspicious behavior, Chicago Police officers requested narcotic K-9's.  Two different Chicago Police Department narcotics K-9's showed positive indications to the rear hatch of the vehicle.  Based on the traffic violations, the actions of [plaintiff], and the positive indications of the K-9's, Chicago Police obtained a state search warrant.  Chicago Police officers executed [the] warrant . . . and recovered a [Sturm] Ruger, 9mm semi-automatic pistol, model P89, serial number 309-49395 from the center console.  A green bag containing a magazine loaded with sixteen (16) 9mm rounds of ammunition was located on the front passenger seat.

> 9.     On June 19, 2001, Chicago Police Officers . . . stopped a maroon 2001 four-door Lincoln Navigator for various traffic violations [in] Chicago, Illinois.  After the stop, it was determined that [plaintiff] was the driver of the vehicle.  After approaching the vehicle from the passenger side, [one of the officers] observed a firearm magazine protruding from underneath the passenger seat.  After a search, Chicago Police officers recovered from underneath the passenger seat a Cobray S.W.D. Inc., model M-11, 9mm semi-automatic pistol, serial number obliterated.

---

[1]  "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1).

> 10.    ATF Special Agent Michael Casey, an expert in the interstate identification of firearms, researched the manufacturer and origin of the two firearms discussed in paragraphs 8 & 9, above.  Special Agent Casey determined that both firearms were not manufactured in the state of Illinois, and having been found in the state of Illinois, they must have traveled in interstate commerce.

Compl., Ex. 2 (Sisto Aff.) ¶¶ 8-10.  Based on this and other information, including plaintiff's prior criminal convictions, *id.*, Ex. 2 (Sisto Aff.) ¶¶ 3-7, Special Agent Sisto believed that plaintiff's actions "were in violation of Title 18 U.S.C., Section 922(g)(1); possession of a firearm by a person who has been convicted of a crime punishable by imprisonment for a term exceeding one year," *id.*, Ex. 2 (Sisto Aff.) ¶ 13.  Thus, "[a]fter initially being charged with state law violations, [plaintiff] was indicted by a federal grand jury with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k)."  *United States v. Wilson*, No. 01 CR 847, 2002 WL 31387011, at *2-3 (N.D. Ill. Oct. 18, 2002) (footnote omitted); *see also United States v. Wilson*, 118 F. App'x 974 (7th Cir. 2004) (rejecting claims that § 922(g)(1) violated the Commerce Clause, Tenth Amendment and Fifth Amendment's Due Process Clause), *cert. denied*, 545 U.S. 1122 (2005); *United States v. Wilson*, No. 01 CR 847, 2002 WL 206980, at *1 (N.D. Ill. Feb. 11, 2002) (denying plaintiff's motions to quash arrest and suppress physical evidence).  A United States Magistrate Judge issued an arrest warrant on October 9, 2001.  Compl., Ex. 2 (Warrant for Arrest) at 1.  Plaintiff since has been convicted and sentenced, and currently is serving a term of imprisonment.  *See Wilson*, 118 F. App'x at 975 ("The district court then sentenced Wilson to 180 months of imprisonment and five years of supervised release on the two pending counts, with the sentences to be served concurrently.").

## II.  DISCUSSION

Plaintiff brings this action under the Privacy Act, *see* 5 U.S.C. § 552a.  *See* Compl. at 1.

Defendants treat the complaint as if it raised a claim under the Freedom of Information Act

("FOIA"), *see* 5 U.S.C. § 552, for release of a particular document – the Firearms Trace

Summary.  Because plaintiff already "*has obtained* the Firearms Trace Summary," defendants

argue that the FOIA claim is moot.  Mem. of P. & A. in Support of Defs.' Mot. to Dismiss Pl.'s

Compl., or in the Alternative, for Summ. J. [ECF No. 20-1] ("Defs.' Mem.") at 2 (emphasis in

original).  In the alternative, defendants argue that the ATF responded properly to plaintiff's

FOIA request, even though their "reasonable, adequate search . . . did not locate the Firearms

Trace Summary." *Id.*   Even if the document had been located, defendants contend that ATF

"would have acted properly to withhold it because it fell within FOIA Exemption (3)." *Id.* at 2-

3.  Recognizing belatedly that plaintiff raises claims under the Privacy Act, defendants argue that

the claims "lack merit and, moreover, comprise an impermissible collateral attack on [p]laintiff's

2001 criminal conviction." *Id.* at 3.

Notwithstanding plaintiff's insistence that this lawsuit is filed solely under the Privacy

Act, *see generally* Pl.'s Reply to Defs.' Mot. to Dismiss the Pl.'s Compl., or in the Alternative,

for Summ. J. ("Pl.'s Opp'n") [ECF No. 23] at 2-3 (emphasis in original) (page numbers

designated by plaintiff), plaintiff appears to oppose defendants' motion on the ground that ATF

failed to release the requested Firearms Trace Summary, *see id*. at 7-8; *see also* Pl.'s Resp. to the

Decl. of Stephanie M. Boucher and Def.'s Statement of Material Facts Not In Genuine Dispute

[ECF No. 26] ("Pl.'s Supp. Opp'n") at 3-5.  Both the FOIA and Privacy Act claims will be addressed.[2]

## A.  Defendants' Motion for Summary Judgment on the FOIA Claim

Summary judgment is warranted if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Summary judgment is available to a defendant in a FOIA case if the agency proves that it has fully discharged its obligations under the FOIA."  *Greenberg v. U.S. Dep't of the Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998) (citations omitted).  "When, as here, an agency's search is questioned, the agency is entitled to summary judgment upon a showing, through declarations that explain in reasonable detail and in a nonconclusory fashion the scope and method of the search, that it conducted a search likely to locate all responsive records."  *Brestle v. Lappin*, 950 F. Supp. 2d 174, 179 (D.D.C. 2013) (citing *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982)).

### 1.  Plaintiff's FOIA Request

In July 2012, plaintiff submitted a request to the Recovery Accountability and Transparency Board under the FOIA and the Privacy Act for the following information:

> I . . . request [that the ATF] produce copies of all records and documents it may contain in its system of records pertaining to any reports of investigation with [plaintiff] being the "Title of Investigation" which does not fall under the Agency exempt clause.

---

[2]   Although Plaintiff's Reply to Defendant's Reply Memorandum in Support of Defendant's Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment addresses both the Privacy Act and FOIA claims, it adds little of substance to the arguments plaintiff has made in his opposition and supplemental opposition to defendants' motion.  Nevertheless, the Court will grant leave to file this submission, which the Clerk of Court shall docket as a surreply.

> One such report bears the [ATF] Case Number of 772010-01-0054, which was submitted by Special Agent Michael G. Casey on 9/19/2001. Also, there was a trace conducted by the [ATF's] National Tracing Center at the resquest [sic] of the Chicago Police Department which was based on [plaintiff's] felony possession of the firearm bearing serial number: 30949395. The firearm was a [Sturm] Ruger, 9mm semi-automatic pistol, Model P89. The trace number was T20000041859. The firearm was recovered from [plaintiff] on 2-17-2000. The trace was requested on March 7, 2000, and the results were printed on March 27, 2000.

Compl., Ex. (Letter to Privacy Act Officer, Recovery Accountability and Transparency Board, from plaintiff dated July 11, 2012). The Recovery Accountability and Transparency Board acknowledged receipt of plaintiff's request, assigned the matter a tracking number (RATB-RIN-0009-12), and referred the request to the ATF. *See generally id.*, Ex. (Letter to plaintiff from Roy Kime, FOIA Public Liaison, Recovery Accountability and Transparency Board, dated July 24, 2012) at 1; *see* Defs.' Mem., Decl. of Stephanie M. Boucher ("Boucher Decl.") [ECF No. 21-1], Ex. A (Letter to Peter Chisholm, Division Chief, ATF, from Roy Kime, Assistant General Counsel, dated July 24, 2012 regarding Freedom of Information Request Referral RATB-RIN-0009-12).

The ATF assigned plaintiff's request a tracking number (FOIA Request 12-1136). Compl., Ex. (Letter to plaintiff from April Sands, Disclosure Assistant, the ATF, dated August 7, 2012).[3] Of 54 pages of records deemed responsive to the request, the ATF released 15 pages in

---

[3]   It appears that plaintiff sent a separate FOIA request directly to the ATF for the same firearms trace information, in addition to the results, if successful, of any "attempt to raise the serial number on the firearm with the obliterated serial number." Compl., Ex. (Letter to Peter Chisholm, ATF, Division Chief, from plaintiff dated July 31, 2012) at 2. The ATF's response to FOIA Request No. 12-1136 pertained to the 54 pages of records referred by the Recovery Accountability and Transparency Board to the ATF for a disclosure determination and a direct response to plaintiff. *See* Boucher Decl. ¶ 6; *see id.*, Ex. C (Letter to plaintiff from Alma McCoy, Disclosure Specialist, ATF). There is no indication that the Recovery Accountability and Transparency Board conducted a search for records, however, as it appears that its

full, released 38 pages in part, and withheld five pages in full. *See id.*, Ex. (Letter to plaintiff

from Alma McCoy, Disclosure Specialist, ATF, dated August 29, 2012, and Document Cover

Sheet); Boucher Decl. ¶ 6. Plaintiff filed an administrative appeal with the Office of Information

Policy ("OIP") challenging the ATF's failure to release the Firearms Trace Summary. *See*

*generally* Compl., Ex. (Letter to OIP from plaintiff dated September 26, 2012). OIP remanded

the matter to the ATF "for further processing of the responsive records." *Id.*, Ex. (Letter to

plaintiff from Anne D. Work, Senior Counsel, Administrative Appeals Staff, OIP, to plaintiff

dated February 19, 2013). On remand, the ATF assigned the matter a new tracking number

(FOIA Request 13-663), and ultimately released five additional pages which previously had been

withheld in their entirety. Boucher Decl., Ex. G (Letter to plaintiff from Stephanie M. Boucher,

Chief, Disclosure Division, ATF, dated May 17, 2013). The ATF did not conduct a search for

the firearm trace document. *Id.* ¶ 23.

2. Adequacy of the ATF's Search for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness and is

dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d

1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency

"fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search

was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v.*

*U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks and citations

---

immediate response was to refer the matter in its entirety to the ATF. *See generally id.*, Ex. A
(Letter to P. Chisholm, ATF, from R. Kime, RATB, dated July 24, 2012). The ATF's supporting
declaration describes searches by ATF personnel at the Chicago Field Division for responsive
records based on information provided by plaintiff in his July 24, 2012 request, that is, the
request originally submitted to the Recovery Accountability and Transparency Board. *See*
Boucher Decl. ¶¶ 16, 18-21.

omitted).  A search need not be exhaustive.  *See Miller v. U.S. Dep't of State,* 779 F.2d 1378,

1383 (8th Cir. 1995).  To meet its burden, the agency may submit affidavits or declarations that

explain in reasonable detail the scope and method of its search.  *Perry*, 684 F.2d at 126.  In the

absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an

agency's compliance with the FOIA.  *Id.* at 127.  On the other hand, if the record "leaves

substantial doubt as to the sufficiency of the search, summary judgment for the agency is not

proper."  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (footnote and citations

omitted); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

"Based upon the information provided by [plaintiff] in his initial FOIA request," ATF

staff forwarded the request to the Chicago Field Division, Boucher Decl. ¶ 12, and the Field

Division staff "conducted an independent . . . search for all materials responsive to [plaintiff's]

FOIA request," *id.* ¶ 13.  The search began with queries of N-Force, *id.* ¶ 16, which the declarant

describes as "a case management system designed to support ATF law enforcement operations

and act[] as a single-point of data entry system [enabling] users to store, utilize, and query

investigative information, and to prepare investigative documents," *id.* ¶ 14.

N-Force is also the "ATF's official case file of record for documenting investigative

activity and information, creating reports, tracking investigative leads and linking data."  *Id.*

"Each criminal investigation . . . is assigned a unique case number," *id.* ¶ 14, and "is identified

by a closed or open status," *id.* ¶ 15.  N-Force is further described as follows:

> N-Force contains the following broad fields: Overview, General,
> Techniques/Services, Firearms, Arson/Explosives, Investigative Profile,
> and Case Users.  Each of these broad fields [has] specific sub-data fields
> which may be populated with, among other things: information about the
> type of investigation being conducted, the persons involved (suspect,
> witnesses, agents, etc.), property seized, reports of investigation, the types

of techniques and services employed during the investigation, and the case users assigned to the investigation.  Information in N-Force may be queried by information regarding an individual, including name, date of birth or social security number, by property or vehicles associated with an individual, or through a full text search which identifies specific words found in ATF's Reports of Investigation which are contained in the database.

*Id.*

Queries using the identifying information set forth in plaintiff's FOIA request, including his name, date of birth and U.S. Marshal number, *see* Compl., Ex. (Letter to the Recovery Accountability and Transparency Board), located plaintiff's case file, which had been assigned case/investigation number 772010-01-0054.  *Id.* ¶¶ 16, 18.[4]  Although "[c]riminal records concerning firearms is one [category] of records that *may* be included in a criminal case file," not every "case file includes every category of record."  *Id.* ¶ 22.  According to the declarant, "two thorough searches of [plaintiff's] criminal case file failed to produce any firearm trace documents."  *Id.*  The ATF's declarant averred that "[a]ll indices and file systems, including N-Force, that would contain information pertaining to [plaintiff] were reasonably searched."  *Id.* ¶ 13.

Plaintiff explains that in his original FOIA request he "had . . . provided plenty of . . . identifying information that could aid in locating [the] specifically requested document."  Pl.'s Supp. Opp'n at 2.  He argues that "[t]he ATF failed to adequately respond throughout the entire administrative process concerning the specifically requested Firearms Trace Summary," *id.* at 5, and even now fails to produce the document.  In effect, plaintiff is evaluating the adequacy of the

---

[4]  A separate search by staff of the ATF's Disclosure Division of the Treasury Enforcement Communications System, *see* Boucher Decl. ¶ 19, yielded "the same file, case/investigation number 77210-01-0054, that the Chicago Field Division located" previously, *id.* ¶ 20.

search based on its results.  "The issue in a FOIA case is not whether the [agency's] searches uncovered responsive documents, but rather whether the searches were reasonable." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).  Plaintiff's dissatisfaction with the search results neither rebuts the presumption of good faith accorded to the ATF's supporting declaration nor demonstrates a genuine issue of material fact in dispute as to the ATF's compliance with the FOIA.

The ATF's supporting declaration adequately describes its efforts to search for records responsive to plaintiff's FOIA request, and these efforts were reasonable under the circumstances.

### 3.  FOIA Exemption 3

"[E]ven if the firearm trace summary had been located," the declarant further states, it "would have been withheld in [its] entirety pursuant to [FOIA Exemption 3] in conjunction with Public Law 112-44 (125 Stat. 552)."  Boucher Decl. ¶ 25.  Although there is another database that contains firearm trace information, the ATF's Federal Trace System ("FTS"), *id*. ¶ 23, agency staff cannot search it because "various Congressional actions have placed restrictions on ATF's disclosure of firearm trace information."  *Id*. ¶ 24.

FOIA Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . provided that such statute (A) [requires withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The ATF asserts that disclosure of firearms trace information is expressly prohibited in the circumstances of this case by Congress, leaving the agency no discretion on the issue.  The relevant language is "found at P.L. 112-55,"

and provides that "no [appropriated] funds . . . may be used to disclose part or all of the contents

of the Firearms Trace System database maintained by the National Trace Center of the [ATF],"

with exceptions made for disclosures to Federal, State, local or tribal law enforcement officers,

among others.  Boucher Decl. ¶ 24.  Nor is public disclosure of such information permitted "in a

civil action in any State . . . or Federal court or in an administrative proceeding other than a

proceeding commenced by the [ATF]."  *Id*.  Thus, the declarant states, the "ATF is prohibited by

Congressional restriction from searching the FTS for FOIA requests."  *Id*. ¶ 23.

Plaintiff asserts that "the current restriction being cited at P.L. 112-55 in an attempt to

claim exemption of The Firearms Trace Summary is misplaced and in error."  Pl.'s Supp. Opp'n

at 5-6.  He fails to identify an error, however, and makes no showing to withstand summary

judgment.  The appropriations legislation on which the ATF relies explicitly bars disclosure of

information "maintained by the National Trace Center . . .  and all such data shall be immune

from legal process."  *Caruso v. U.S. Bureau of Alcohol, Tobacco & Firearms,* 495 F. App'x 776,

778 (9th Cir. 2012) (citation omitted and emphasis removed); *see Higgins v. U.S. Dep't of

Justice*, 919 F. Supp. 2d 131, 144-45 (D.D.C. 2013); *Skinner v. U.S. Dep't of Justice*, 744 F.

Supp. 2d 185, 204 (D.D.C. 2010).  Had the ATF located the desired Firearm Trace Summary,

under FOIA Exemption 3, it need not have disclosed the document to plaintiff.

### B.  *Defendants' Motion to Dismiss the Privacy Act Claims*

Plaintiff explains the basis of this lawsuit as follows:

> I seek the restoration of my personal liberty, which was taken as a result of
> the adverse determination made by the ATF on September 19, 2001, and
> initiation of the fabricated criminal complaint of a claim of a violation of
> Title 18 U.S.C. [§] 922(g)(1) using the adverse determination as the primary
> reason of filing the criminal complaint on October 9, 2001, while all the
> time, withholding the trace results which showed how the firearm lawfully

reached the State of Illinois at the hands of federally licensed dealers, all of
which is contained in the Firearms Trace Summary which is, and has been
stored in the ATF's National Tracing Center's system of records and data
base since March 27, 2000.

Compl. at 1.  The September 19, 2001 determination to which plaintiff refers is Special Agent

Casey's conclusion that, based on the manufacture of the Ruger "outside the State of Illinois, [it

had] therefore . . . moved in or affected interstate commerce in at least one point in time."  *Id*.,

Ex. 3.

Plaintiff contends that his "possession of [the Ruger] originated in Illinois and ended in

Illinois, with absolutely nothing to do with interstate commerce as revealed by the [Firearm

Trace Summary]."  *Id*. at 6.  He relies on the Firearms Trace Summary itself to support his

position, noting that "it contains only purely factual information regarding the authorized

movement of the [Ruger] from the manufacturer to the purchaser, all by the hands of federally

licensed firearms dealers."  Pl.'s Opp'n at 3.  If the Firearms Trace Summary nowhere reflects

plaintiff's personal involvement in the Ruger's journey from Connecticut to Illinois, plaintiff

asserts, he could not possibly have violated 18 U.S.C. § 922(g)(1).  In other words, "[t]he

information revealed from the trace, combined with [§ 922(g)(1)(A)], verifies that no Federal

crime was committed by [plaintiff]."[5]  Compl. at 7.

-------

[5]   Plaintiff is under the mistaken impression that, in order to prove guilt for a violation of
§ 922(g)(1), the government must show that plaintiff personally shipped or transported the Ruger
in interstate or foreign commerce, or possessed the Ruger in or affecting commerce.  *See* Pl.'s
Opp'n at 4.  "[T]o satisfy the interstate commerce element of § 922(g), the prosecution need only
make the de minimus showing that the possessed firearm traveled in interstate commerce."
*United States v. Palozie*, 166 F.3d 502 (2d Cir.), *cert. denied*, 526 U.S. 1151 (1999).   In other
words, the prosecution need only prove that the Ruger crossed state lines at some point in time.
*See United States v. Teleguz*, 492 F.3d 80, 87 (1st Cir. 2007) (finding evidence sufficient where
expert testified "that twenty-two of the twenty-five firearms at issue necessarily had crossed state
or foreign lines because they were originally manufactured in other states or countries); *United
States v. Carter*, 917 F. Supp. 1, 3 (D.D.C. 1995) (finding that "[a] jury thus could legitimately

It appears that plaintiff's Privacy Act claims arise from Special Agent Casey's interstate nexus determination and from the ATF's reliance on it – while ignoring the purported "truth" set forth in the Firearm Trace Summary – "to make adverse determinations against [plaintiff] in the deceitful misrepresentations used to obtain the criminal complaint, arrest warrant, and criminal conviction." *Id.* at 8. As a result, plaintiff contends, he has been "strip[ped] of his liberty with adverse determinations and knowing[] misstatements of facts" to establish "probable cause for the arrest warrant, indictment, superseding indictment and subsequent criminal conviction." *Id.* at 9. Plaintiff demands, among other relief, his "immediate release . . . from the custody of the Federal Bureau of [P]risons, . . . the restoration of the loss of his personal liberty," *id.* at 12, and an award of $100 million, *id.* at 13.

"The Privacy Act regulates the collection, maintenance, use, and dissemination of information about individuals by federal agencies." *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) (internal quotation marks and citations omitted), *cert. denied*, 557 U.S. 919 (2009). Subsection (e)(5) of the Privacy Act requires that an agency "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). An individual may request access to and amendment of an agency's records or information in a system of records pertaining to him. *See id.* § 552a(d). That individual may file a civil action against an agency which "makes a determination . . . not to amend an individual's record in accordance with his request," *id.* § 552a(g)(1)(A), or if the agency:

---

convict [the defendant] under Section 922(g) by finding that the semi-automatic rifle had at some point been in or affected interstate or foreign commerce").

> fails to maintain any record concerning any individual with such accuracy,
> relevance, timeliness, and completeness as is necessary to assure fairness in
> any determination relating to the qualifications, character, rights, or
> opportunities of, or benefits to the individual that may be made on the basis
> of such record, and consequently a determination is made which is adverse
> to the individual.

*Id*. § 552a(g)(1)(C); *see id*. §552a(g)(1)(D) ("Whenever any agency . . . fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual [the individual may bring a civil action].").[6]  If the Court determines that the agency's actions were willful or intentional, it may award actual damages sustained by the individual as a result of the agency's failure to maintain its records with the requisite level of accuracy, and further may award costs of the action and attorney fees.  *Id*. § 552a(g)(4).  In this action, plaintiff seeks relief "in the form of correction of adverse determinations made concerning interstate firearms nexus determinations which caused adverse effects upon [him]."  Compl. at 1.

Defendants construe plaintiff's Privacy Act claims as "an impermissible collateral attack on his 2001 conviction."  Defs.' Mem. at 11.  According to defendants, "[p]laintiff seeks to impute liability to Defendants under the Privacy Act by arguing that this Firearms Trace at issue . . . contradicts the basis for his arrest and conviction."  *Id*.

If plaintiff were to prevail on his Privacy Act claims by showing that the ATF failed to maintain its records about plaintiff with the requisite level of accuracy and relied on them in making an adverse determination, the basis for his criminal conviction is likely undermined. Without the ATF's interstate nexus determination, the government would have had to prove in

---

[6]  The same standard for accuracy under subsection (e)(5) applies to subsection (g)(1)(C).  *See Doe v. United States*, 821 F.2d 694, 698 n.10 (D.C. Cir. 1987) (en banc).

some other way a critical element of the crime of which plaintiff has been tried and convicted, that is, a violation of 18 U.S.C. § 922(g)(1). If plaintiff's conviction were invalidated, his release from custody likely would be accelerated. Insofar as a ruling in plaintiff's favor on the Privacy Act claims may have an impact on the duration of his confinement, his challenge should be brought in a petition for a writ of habeas corpus.[7] *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013) (stating that "a federal prisoner need bring his claim in habeas only if success on the merits will necessarily imply the invalidity of confinement or shorten its duration") (internal quotation marks and citation omitted)). Furthermore, unless and until plaintiff demonstrates success in a habeas action, his claim for damages fails. *Skinner v. U.S. Dep't of Justice*, 584 F.3d 1093, 1100 (D.C. Cir. 2009), *cert. denied*, 131 S. Ct. 72 (2010).

The Privacy Act is not the proper means by which a prisoner collaterally may attack his conviction or sentence. *White v. U.S. Prob. Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (per curiam); *see Cargill v. U.S. Prob. Office for the Middle District of North Carolina*, No. 10-0388, 2010 WL 917010, at *1 (D.D.C. Mar. 9, 2010) ("This court is not the proper forum in which to seek a determination that the sentence had been imposed in error, and the Privacy Act is not the

---

[7]   The Court notes that plaintiff's prior challenges have been unsuccessful. *See Wilson v. Terrell*, 283 F. App'x 658, 659 (10th Cir. 2008) (per curiam) (affirming dismissal of petition for writ of habeas corpus under 28 U.S.C. § 2241 where plaintiff did not establish inadequacy or ineffectiveness of remedy under 28 U.S.C. § 2255, and his failure to obtain relief under § 2255 in prior petition does not establish that remedy was inadequate or ineffective); *Wilson*, 2002 WL 31387011, at *1-3 (rejecting plaintiff's arguments that indictment should have been dismissed as violative of the Commerce Clause and the Second, Fifth and Tenth Amendments to the United States Constitution).

proper means by which a prisoner may collaterally attack his sentence unless he can also show that his sentence has been invalidated by a court.").  Nor is the Privacy Act the proper means to "amend[] the judgments of federal officials or . . . other[s] . . . as those judgments are reflected in records maintained by federal agencies."  *Kleinman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992) (quoting *Rogers v. U.S. Dep't of Labor*, 607 F. Supp. 697, 699 (N.D. Cal. 1985)); *Levant v. Roche*, 384 F. Supp. 2d 262, 270 (D.D.C. 2005) (noting that, where "Plaintiff's true complaint is not about the accuracy of his records, but about the underlying decision they reflect," the claim is not a proper basis for a Privacy Act suit).  In other words, plaintiff cannot revise the underlying interstate nexus determination by means of this Privacy Act suit.

## III.  CONCLUSION

The ATF has complied with its obligations under the FOIA, and the complaint fails to state a claim under the Privacy Act upon which relief can be granted.  Accordingly, defendants' motion will be granted.  A Final Order accompanies this Memorandum Opinion.

Signed this 31st day of March, 2015.

/s/
RICHARD W. ROBERTS
Chief Judge
United States District Court